1
2
3
4
5
6

Douglas G. Muehlhauser (SBN 179495)
doug.muehlhauser@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA 92614
Phone:       (949) 760-0404
Facsimile:   (949) 760-9502

7
8
9
10
11
12

Peter W. Peterson (*pro hac vice*)
David R. Pegnataro (*pro hac vice*)
delpet@delpet.com
DeLIO, PETERSON & CURCIO, LLC
700 State Street, Suite 402
New Haven, Connecticut 06511
Phone:       (203) 787-0595
Facsimile:   (203) 787-5818

13
14

Attorneys for Defendant
DESIGNS FOR HEALTH, INC.

15
16
17

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| AKESO HEALTH SCIENCES, LLC, | ) Case No. 2:16-cv-07749 SJO (PJWx) |
| Plaintiff, | ) Hon. S. James Otero |
| v. | ) **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56(a)** |
| DESIGNS FOR HEALTH, INC., | ) |
| Defendant. | ) Hearing |
| | ) Date:      April 30, 2018 |
| | ) Time:      10:00 a.m. |
| | ) Ctrm:      10C |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page No(s).**

I. INTRODUCTION ............................................................................. 1

II. BACKGROUND .............................................................................. 1

III. LEGAL STANDARDS ................................................................... 2

IV. ARGUMENT ................................................................................. 3

   A.   Any requested relief pursuant to Akeso's Amended Complaint is barred under the doctrine of equitable estoppel .......... 3

      1.   Hendrix's 10-year silence is a misleading communication .................................................................. 4

      2.   DFH relied on Hendrix's silence and misleading communication .................................................................. 6

      3.   DFH would suffer material prejudice if Akeso were allowed to now assert its claims under the '450 Patent ......... 7

      4.   Equitable estoppel bars recovery of pre-filing and post-filing damages by Akeso ................................................ 8

   B.   Claims 14 and 16 of the '450 Patent are invalid ............................. 9

      1.   Claims 14 and 16 are invalid as obvious ............................... 9

      2.   The Asserted Claims Are Invalid On Grounds Of Non-Enablement or Indefiniteness ............................................. 16

   C.   Akeso is not entitled to lost profits as it is neither the owner nor the exclusive licensee of the '450 Patent ................................. 18

V. CONCLUSION .............................................................................. 20

# TABLE OF AUTHORITIES

Page No(s).

**Cases**

*Anderson v. Liberty Lobby, Inc*., 477 US. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)................................................................................................ 2

*Aspex Eyewear Inc. v. Clariti Eyewear Inc.,* 605 F.3d 1305 (Fed. Cir. 2010). 6, 7

*Aukerman Co. v. R.L. Chaides Construction Co*., 960 F.2d 1020 (Fed. Cir. 1992) ............................................................................................. 3, 5, 7, 8

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)................................................................................................ 2

*Ex parte Clapp*, 227 USPQ 972 (Bd. Pat. App. & Inter. 1985) ........................ 10

*Gossen Corp. v. Marley Mouldings, Inc*., 977 F.Supp. 1346 (E.D. Wisc.).. 6, 7, 8

*Graham v. John Deere Co*., 383 U.S. 1, 86 S. Ct 684, 15 L. ED 2d 545 (1966). 9

*High Point SARL v. Sprint Nextel Corp*., 817 F.3d 1325 (Fed. Cir. 2016) ...... 3, 8

*In re '318 Pat. Infr. Litig*. 583 F.3d 1317 (Fed Cir. 2009)........................... 16, 18

*In re Vaeck*, 947 F.2d 488, 20 USPQ2d 1438 (Fed. Cir. 1991) .................. 10, 17

*Nautilus, Inc. v. Biosig Instruments, Inc*., 572 U.S. ___, 134 S. Ct. 2120, 189 L. Ed. 2d 37 (2014) ................................................................................ 17, 18

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. ___, 134 S. Ct 1962, 188 L. Ed. 2d 979 (2014) ........................................................................................ 3

*Poly-America LP v. GSE Lining Technology Inc*., 383 F.3d 1303 (Fed. Cir. 2004) ............................................................................................... 18, 20

*Radio Systems Corp. v. Lalor,* 709 F.3d 1124 (Fed. Cir. 2013).......................... 6

*Sakraida v. Ag Pro, Inc.,* 425 U.S. 273, 96 S.Ct. 1532, 47 L. Ed. 2d 784 (1976) ...................................................................................................... 12

*SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*, 580

**TABLE OF AUTHORITIES**
*(cont'd.)*

**Page No(s).**

U.S. ___, 137 S.Ct. 954, 197 L. Ed. 2d 292 (2017) .......................................... 3

*Sitrick v. .Dreamworks .LLC,* 516 F.3d 993 (Fed. Cir. 2008) ......................... 16

*Stamps.com, Inc. v. Endicia, Inc*., 437 F.App'x 897 (Fed. Cir. 2011)............... 15

*Stryker Corp. v. Zimmer Inc*., 741 F.Supp. 509 (D.N.J. 1990) ........................... 8

*Takeda Chem. Indus. v. Alphapharm Pty., Ltd*., 492 F.3d 1350 (Fed. Cir. 2007) 9

*Tawnsaura Grp. LLC v. Maximum Human Performance, LLC*, 2014 U.S. Dist. LEXIS 184819 (C.D. Cal., July 14, 2014) ............................................... 14, 17

*Winbond Elecs. Corp. v. Intl. Trade Commn*., 262 F.3d 1363 (Fed. Cir. 2001) .. 3

# TABLE OF AUTHORITIES
## *(cont'd.)*

**Page No(s).**

**Statutes**

35 U.S.C. § 271................................................................................................. 1

35 U.S.C. §103.................................................................................................. 9

35 U.S.C. §112...................................................................................... 16, 17, 18

Fed. R. Civ. P. 56................................................................................... 1, 2

## I.   INTRODUCTION

Pursuant to Fed. R. Civ. P. 56(a), defendant, Designs for Health, Inc. ("DFH") submits this memorandum of law in support of its motion for summary judgment. DFH moves for judgment that the First Amended Complaint be dismissed under the doctrine of equitable estoppel due to its detrimental reliance on the ten (10) years of silence following accusation of infringement, and that asserted claims 16 and 18 of U.S. Patent No. 6,500,450 (the " '450 Patent") are invalid for obviousness and non-enablement. DFH also moves that plaintiff Akeso Health Sciences, LLC ("Akeso") is not entitled to lost profits since there is no evidence that it is either the exclusive licensee, or even owner, of the '450 Patent. DFH attaches its supporting evidence with the Declaration of David R. Pegnataro and Statement of Undisputed Facts ("SUF").

## II. BACKGROUND

Akeso alleges in this single Count action both direct and inducement of infringement of the '450 Patent under 35 U.S.C. § 271(a) and (b) in connection with DFH's Migranol dietary supplement product.[1] Akeso alleges that DFH directly infringes claims 16 and 18 of the '450 Patent, and further, that the specific use of Migranol by end users and/or health care practitioners as directed

---

[1] The Court granted DFH's motion to dismiss as to contributory infringement under 35 U.S.C. §271(c) in Akeso's First Amended Complaint, recognizing that DFH's accused Migranol is labeled as a dietary supplement. [Dkt. No. 28].

on the product label constitutes indirect infringement.[2] Akeso seeks damages but no injunction against DFH.[3]

## III.  LEGAL STANDARDS

Federal Rule of Civil Procedure 56(a) mandates that a court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The moving party's initial burden "may be discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. Once the moving party meets its initial burden, the "party asserting that a fact cannot be or is genuinely disputed must support the assertion." Fed. R. Civ. P 56(c)(1). "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

---

[2] *See* First Amended Complaint [Dkt. No. 23], ¶¶15-22, 24-25, 30, and 33-36.
[3] *See* First Amended Complaint [Dkt. No. 23], Prayer for Relief.

## IV.  ARGUMENT

### A.  Any requested relief pursuant to Akeso's Amended Complaint is barred under the doctrine of equitable estoppel

The defense of equitable estoppel requires three elements: 1) the patent owner communicates something in a misleading way, either by words, conduct or silence; 2) the accused infringer relies upon that communication; and 3) the accused infringer would be harmed materially if the patent owner is later permitted to assert any claim inconsistent with his earlier conduct. *Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992); *High Point SARL v. Sprint Nextel Corp.*, 817 F.3d 1325, 1330 (Fed. Cir. 2016).[4]

Equitable estoppel bars recovery of both pre- and post-filing damages since the defendant is granted an implied license to use the patent in issue. *High Point*, 817 F.3d at 1331 (Equitable estoppel results in a license to use the invention that extends throughout the life of the patent.). "Where equitable estoppel is established, all relief on a claim may be barred." *Aukerman,* 960 F.2d at 1041. Equitable estoppel also bars subsequent assignees of the patent. *High Point*, 817 F.3d at 1331 ("That effect [of equitable estoppel] can arise when a predecessor's conduct is imputed to its successors-in-interest.").

---

[4] See also *SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*, 580 U.S. ___, 137 S. Ct. 954, 967, 197 L. Ed. 2d 292 (2017) ("the doctrine of equitable estoppel provides protection against… unscrupulous patentees inducing potential targets of infringement suits to invest in the production of arguably infringing products." (citing *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. ___, 134 S. Ct 1962, 1972, 188 L. Ed. 2d 979 (2014)).

### 1. Hendrix's 10-year silence is a misleading communication

On April 18, 2006, more than ten (10) years before this suit was filed, Curt Hendrix, the inventor and then-owner of the '450 Patent, sent a letter to DFH accusing DFH of infringing the '450 Patent and demanded that DFH cease and desists manufacture and sale of Migranol. Ex. 15. DFH's attorney responded on April 27, 2006, solicited further communication, but never indicated compliance with Hendrix's demand. Ex. 16; *see also* Ex. 1, the deposition of Curt Hendrix, Akeso's (30(b)(6) corporate witness ("Hendrix Dep.") 79:4-84:15 and SUF ¶¶1-4. DFH believed at that time that it was not infringing the patent because the Migranol dietary supplement did not incorporate the compounds as recited in the composition claims, DFH did not test Migranol for its effects on reducing the symptoms of migraine headache, and DFH did not direct or instruct users to use Migranol to reduce the symptoms of migraine headache. Ex. 2, Lizotte Decl., ¶9.

No further communications were received from Mr. Hendrix or Akeso until the filing of this lawsuit on October 18, 2016. Relying on the silence and inaction of Mr. Hendrix after DFH's April 27, 2006 response letter, DFH continued to promote and sell its Migranol supplement, believing that Mr. Hendrix had abandoned his allegations of infringement of the '450 Patent. Ex. 2, Lizotte Decl. ¶¶11-15; SUF ¶¶1-15.

To establish equitable estoppel, a defendant is not required to prove intent

-4-

by the plaintiff-patentee to mislead while remaining silent; rather, the issue is whether a plaintiff's course of conduct reasonably gave rise to an inference in defendant that the plaintiff was not going to enforce a patent against it. *Aukerman*, 960 F.2d at 1043. Misleading communication is found when "the patentee specifically objects to the activities currently asserted as infringement in the suit and then does not follow up for years." *Id*. at 1042. For misleading inaction to constitute misleading communication, the "plaintiff's inaction must be combined with other facts respecting the relationship or contacts between the parties to give rise to the necessary inference that the claim against the defendant is abandoned." *Id*. Here, after sending his cease-and-desist letter to DFH, and receiving DFH's response (Ex. 1, Hendrix Dep. 79:4-15 and 83:9-21), Hendrix admitted that he was aware that DFH continued to sell its Migranol supplement after the response, and that he purposefully did nothing further to convey to DFH that he intended to pursue his infringement charge. Ex. 1, Hendrix Dep. 83:9-84:25; SUF ¶¶6-7.

Hendrix's failure to respond equates to affirmatively misleading silence for purposes of determining equitable estoppel.[5] Hendrix's failure to follow up on his accusations for nearly ten years is almost double the period of silence in *Radio Systems* and triple that in *Aspex,* where equitable estoppel was found.

## 2. DFH relied on Hendrix's silence and misleading communication

Reliance is shown by expanded sales and promotion of the accused products and/or increased expenditures, provided that the activities were undertaken, at least in part, based on the understanding that the patentee would not sue.[6] As in *Aspex*, DFH relied on Hendrix and his counsel's silence in the ensuing years, believing he would not sue, and continued to sell and promote their Migranol supplement. Ex. 2, Lizotte Decl. ¶¶11, 15. DFH was lulled into a false sense of security by Hendrix's silence to increase its Migranol sales over

---

[5] See *Radio Systems Corp. v. Lalor,* 709 F.3d 1124 (Fed. Cir. 2013) (equitable estoppel affirmed where a patentee was silent for over four and a half years after the accused infringer responded to an initial demand letter.); *Aspex Eyewear Inc. v. Clariti Eyewear Inc.,* 605 F.3d 1305 (Fed. Cir. 2010) (a three year period of silence following an alleged infringer's reply to a cease-and-desist letter stating that they believed there was no infringing conduct was misleading). *See, also*, *Gossen Corp. v. Marley Mouldings, Inc*., 977 F.Supp. 1346, 1354 (E.D. Wisc. 1997)( "the only possible reasonable inference to be drawn from the parties correspondence and from the ensuing [5] years of silence is that Gossen did not intend to press an infringement claim against Marley. [Citations omitted] Consequently, Marley has met its burden of establishing misleading conduct on the part of Gossen.")

[6] *Aspex*, 605 F.3d at 1312 ("[T]o show reliance on Aspex's silence and inaction, Clariti need not prove precisely what alternative paths it would have taken, or that every marketing decision was based on reliance on Aspex's silence.")

the subsequent 10 years by more than 300% (*Id*., ¶ 16).[7] SUF ¶¶8-15.

### 3. DFH would suffer material prejudice if Akeso were allowed to now assert its claims under the '450 Patent

Material prejudice is established by defendant's promotion of the allegedly infringing product and expansion of its sales force during a period of silence after receiving patentee's aggressive demand letters. *Aspex*, 605 F.3d at 1312. The *Aspex* Court held that such a business development by defendant, and inaction by patentee, represented a significant change in economic position and constituted material prejudice sufficient to support equitable estoppel.[8]

DFH's prejudicial change in economic position is evidenced not only by the sales increase of the Migranol supplement, but also by lost opportunities. Over this time, DFH has grown to the point that it currently sells over 300 products. Ex. 26. Had Hendrix notified DFH of his intent to maintain his allegations of infringement, DFH would have had the opportunity to modify its Migranol supplement to further remove the possibility of a charge of infringement or, alternatively, direct its efforts and expenditures made for the Migranol supplement instead to an existing or new product. Ex. 2, Lizotte Decl.

[7] See, *Gossen Corp.*, 977 F.Supp. at 1355 ("Marley was lulled by Gossen's inaction into a false sense of security resulting in its decision to increase its investment in the manufacture of its ThermoStop product. [Citation omitted] These undisputed facts are sufficient to establish the reliance element of Marley's equitable estoppel defense.")

[8] Prejudice may be shown by "a change of economic position flowing from actions taken or not taken by the patentee." *Apex, 605 F.3d at 1312. See also Aukerman Co. v. R.L. Chaides Construction Co.,* 960 F.2d at 1043.

-7-

¶¶12-15, 17, 18; SUF ¶¶8-15. Such change in DFH's economic position in reliance on Hendrix's 10 years of silence constitutes material prejudice to establish equitable estoppel.[9]

Similarly to the patentee in *Stryker*, Hendrix threatened immediate and vigorous enforcement of his patent rights in 2006, only to then remain silent for over ten (10) years, until it became commercially and economically advantageous to pursue DFH for damages. *Stryker*, 741 F.Supp. at 513.

### 4.    Equitable estoppel bars recovery of pre-filing and post-filing damages by Akeso

DFH's equitable estoppel defense also applies to Akeso, as subsequent assignee of Hendrix's '450 Patent. *High Point*, 817 F.3d at 1331. Accordingly, Akeso should be barred by equitable estoppel from recovering both pre-filing and post-filing damages against DFH. *Id.* at 1330*; Aukerman*, 960 F.2d at 1041.

---

[9] See, *Gossen*, 977 F.Supp. at 1356 ("This expansion of sales and manufacturing facilities occurred, in part, as a result of Marley's belief that Gossen had decided not to sue. Based on this showing, the court finds that Marley has met its burden of showing economic prejudice and a nexus between that prejudice and Gossen's misleading conduct."); See also *Stryker Corp. v. Zimmer Inc*., 741 F.Supp. 509, 513 (D.N.J. 1990) ("...a patentee "with knowledge of the alleged infringing activity, does nothing over a period of [three] years other than mislead a purported infringer and those who have gone before to believe that there was and is no problem, lying in wait until it has become 'commercially and economically worthwhile' to do something, has engaged in affirmatively misleading silence of the worst order.")

**B.     Claims 14 and 16 of the '450 Patent are invalid**

    **1.     Claims 14 and 16 are invalid as obvious**

        **a.     Law on obviousness**

A claim is invalid under 35 U.S.C. §103 if, at the time of the invention, the claimed subject matter as a whole would have been obvious to a person of ordinary skill in the art. *See Wyers v. Master Lock Co.*, 616 F.3d 1231, 1237 (Fed. Cir. 2010); 35 U.S.C. §103. "Whether an invention would have been obvious under 35 U.S.C. §103 is a question of law… based upon underlying factual questions. *Takeda Chem. Indus. v. Alphapharm Pty., Ltd*., 492 F.3d 1350, 1355 (Fed. Cir. 2007)(internal quotation marks and citation omitted). In assessing obviousness, a court considers (1) the scope and content of the prior art; (2) the differences between the prior art and the asserted claims; (3) the level of ordinary skill in the art; and (4) any relevant secondary considerations. *Id.* (citing *Graham v. John Deere Co*., 383 U.S. 1, 17–18, 86 S. Ct 684, 15 L. ED 2d 545 (1966); See also *KSR Int'l Co. v. Teleflex Inc*., 550 U.S. 398, 406, 127 S. Ct 1727, 167 L. ED 2d 705 (2007)). Summary judgment is appropriate if "the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors." *KSR*, 550 U.S. at 427.

At the time the '450 Patent was issued in 2002, the U.S. Patent and Trademark Office applied the "TSM" test whereby a patent claim was obvious

only if there was some teaching, suggestion, or motivation to combine the prior art. See, e.g., *Wyers, 616 F.3d* at 1238. The suggestion or motivation to modify or combine reference teachings then may have come from the references themselves, either expressly or impliedly, or in the knowledge generally available to one of ordinary skill in the art. *In re Vaeck*, 947 F.2d 488, 20 USPQ2d 1438 (Fed. Cir. 1991)("not based on applicant's disclosure"). See, also, *Ex parte Clapp*, 227 USPQ 972, 973 (Bd. Pat. App. & Inter. 1985).

The Supreme Court's subsequent *KSR* decision identified less stringent rational to support a conclusion of obviousness as compared to the overly rigid TSM test. *KSR,* 550 U.S. at 404, 415-421. The rationale to support a conclusion that the claim would have been obvious has been well settled in case law, in that all claimed elements were known in the prior art and one skilled in the art could have combined the elements as claimed by known methods with no change in their respective functions, and the combination yield nothing more than predictable results. *KSR,* 550 U.S. at 416.

### b.   Claims 16 and 18 are obvious from the Migraine Article incorporating Peikert

Hendrix commissioned the authoring of the NPRC article entitled "Migraine" by Donald Brown, Alan Gaby, and Ronald Reichert ("Migraine Article"). Ex. 1, Hendrix Dep. 59:23-60:8; Ex. 12; SUF ¶20. Although the Migraine Article itself is not prior art as a publication, Hendrix has admitted the

description of the uses of feverfew, magnesium, and riboflavin therein describes the prior art, i.e., it "summarize[es] the natural remedies for migraine that were known at the time" and describes what was known to others about the use of these compositions to reduce the symptoms of migraine headaches before Hendrix's invention. Ex. 19, Pl. Inter. Resp. No. 9; Ex. 1, Hendrix Dep. 62:1-21, 62:22-63:12; SUF ¶¶21-24, 31, 33. While the Migraine Article itself was considered during prosecution of the '450 Patent, the USPTO Examiner considered it under the prior TSM test, and not the subsequent, less stringent standard for obviousness under *KSR*. This Court has also recognized that which is described in the Migraine Article to be prior art to the '450 Patent. *See* Claim Construction Order [Dkt. No. 48].

The Migraine Article discloses treatments for migraine sufferers including the separate use of feverfew (parthenolide extract), magnesium and riboflavin. Ex. 12, SUF ¶¶ 25-37. With respect to feverfew, it discloses a minimum parthenolide daily dose for treating migraines is at least 0.25 mg parthenolide, with an exemplary daily dose of 0.50 mg parthenolide. Ex. 12; Dkt. No. 48; SUF ¶¶26-30. It discloses it was known that riboflavin in an amount of 400 mg/day was effective to treat migraines. Ex. 12; SUF ¶¶31-32. With respect to the use of magnesium, it specifically references Peikert ("Prophylaxis of migraine …"), which discloses that high doses (600 mg) of trimagnesium dicitrate, a salt of an organic acid, are successful for treatment of

migraines. Exs. 12, 14; SUF ¶¶33-37. Thus, the Migraine Article, as it incorporates Peikert, discloses the individual components of claims 16 and 18: parthenolide in the form of feverfew at a daily dose of 0.50 mg (within the range of "about 0.35 mg to about 2.1 mg of parthenolide" as construed by the Court), a magnesium salt of an organic acid, and riboflavin, all for use in reducing the symptoms of migraine headaches. Again, this has been admitted by Hendrix and Akeso. Ex. 19, Pl. Inter. Resp. No. 9; Ex. 1, Hendrix Dep. 62:1-21, 62:22-63:12; SUF ¶¶21-24, 31, 33.

A patent claim is obvious "when a patent simply arranges old elements with each performing the same function it had been known to perform and yields no more than one would expect from such an arrangement," or when it yields predictable results. *KSR*, 550 U.S. at 415-417 (quoting *Sakraida v. Ag Pro, Inc.,* 425 U.S. 273, 282, 96 S.Ct. 1532, 47 L. Ed. 2d 784 (1976)). One of ordinary skill in the art applicable to the '450 Patent-in-suit would be an individual with a bachelor's degree in chemistry, biochemistry, nutrition/dietetics, herbal medicine, pharmacology, or the like, and at least a year or more of post-bachelor education and/or work or lab experience in clinical nutrition, metabolism, or biochemistry. Ex. 9, Volek Expert Report, p.4; SUF ¶38. Alternatively, one of ordinary skill in the art would have at least a bachelor's degree or equivalent education in chemistry, nutrition, or a similar discipline, and 2-3 years of experience in the formulation of dietary supplements

-12-

for migraine sufferers. SUF ¶39.

In order to arrive at the invention of Claims 16 and 18, all that one of ordinary skill in the art would have to do is simply combine the compositions already disclosed separately in the Migraine Article, in the same forms and amounts therein. Based on either of the definitions of 'one of ordinary skill in the art' set forth herein, the Migraine Article, as it incorporates the Peikert publication, renders claims 16 and 18 invalid since it would have been obvious to a person of ordinary skill in the art at the time of the '450 Patent invention to combine feverfew, magnesium and riboflavin, each performing its known function of treating and/or reducing symptoms of migraine, and yielding predictable treatment results. *KSR*, 550 U.S. at 415-17. In this case, "when there is motivation to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely that product [was] not of innovation but of ordinary skill and common sense. In that instance the fact that a combination was obvious to try might show that it was obvious under § 103." *Id.* at 421.

With this finite number of ingredients identified in the Migraine Article having predictable results, a person of ordinary skill in the art at the time of the '450 Patent invention would have good reason and motivation to combine them for the predictable results of treating and/or reducing symptoms of migraine

headache. *Tawnsaura Grp. LLC v. Maximum Human Performance, LLC*, 2014 U.S. Dist. LEXIS 184819 [*31] (C.D. Cal., July 14, 2014)("A person of ordinary skill in the art would have had a reasonable expectation" that the combination of the prior art "would have succeeded and would have achieved the invention."). Hendrix admitted that in selecting the three ingredients of claim 16, parthenolide, riboflavin and magnesium salt, he did nothing more than what one of ordinary skill in the art or professional in this field would do. Ex. 1, Hendrix Dep. 76:6-14; SUF ¶¶40-41. The reason and motivation in doing so comes from a person of ordinary skill in the art recognizing that feverfew, magnesium, and riboflavin all have effectiveness at treating migraine headaches individually, all work through different biological mechanisms, all fall into different categories of dietary compounds (i.e., herb, mineral, vitamin), they do not interact in a way that would cause concern of side effects, and their combination would render a reasonable expectation of success. Ex. 9, Volek Expert Report pp. 4, 11-12; SUF ¶¶42-44. As such, claims 16 and 18 of the '450 Patent are not that of innovation, but rather that of ordinary skill and common sense, and thereby are invalid based on obviousness over the Migraine Article. *KSR,* 550 U.S. at 421.

           c.      **Claims 16 and 18 are obvious from the Migraine Article in combination with Lazarowych, Mauskop, Peikert, Adelman or Gilkey**

Other prior art also renders claims 16 and 18 obvious. *See*, Exs. 11, 13,

14, 17, 18, 20; SUF ¶¶45-72. Lazarowych (Canadian Patent No. 2141126) discloses migraine treatments including a combination of parthenolide at daily doses of about 0.05 to 10.0 mg, riboflavin at daily doses of about 0.1 to 5,000 mg, and a magnesium salt of an organic acid, i.e., magnesium stearate. Ex. 20; SUF ¶¶52-57. Mauskop (U.S. Pat. No. 5,538,959) discloses migraine treatments having high amounts of magnesium salt of an organic acid (e.g., magnesium citrate), e.g., 5-30 wt. % of the composition. Ex. 13; SUF ¶¶58-61. Peikert ("Prophylaxis of migraine …") discloses treating migraines using high daily doses of 600 mg magnesium salt of an organic acid (trimagnesium dicitrate). Ex. 14; SUF ¶¶62-64. Adelman ("Cost Considerations in Headache …") and Gilkey ("Use of Over-the-Counter Drugs…") disclose various over-the-counter ("OTC") compositions including feverfew, riboflavin, and magnesium for migraine prevention and reduction in symptoms. Exs. 17, 18; SUF ¶¶65-72. It would have been likewise obvious to a person of ordinary skill in the art to combine the teachings of the Migraine Article with Lazarowych, Mauskop, Adelman and/or Gilkey, to arrive at the claimed invention. *KSR*, 550 U.S. at 415-17.

### d. Akeso cannot rebut obviousness

Secondary considerations require a nexus between any purported success and the merits of the claimed invention. *Stamps.com, Inc. v. Endicia, Inc*., 437 F.App'x 897, 905 (Fed. Cir. 2011)("nexus between the merits of the claimed

invention' and the 'evidence of secondary considerations' " is required to rebut obviousness)(citations omitted). Here, Akeso's corporate witness Hendrix has denied that its MigreLief products treat or reduce the symptoms of migraines. Ex. 1, Hendrix Dep. 29:23-30:4; SUF ¶73. In any event, Akeso has not conducted any testing or performed any surveys on the effectiveness of MigreLief in reducing the symptoms of migraine headaches or even as a nutritional supplement, and any purported evidence is merely anecdotal. Ex. 1, Hendrix Dep. 39:8-40:24; SUF ¶74. Thus, Akeso cannot rebut the assertion of invalidity based on obviousness using secondary considerations.

### 2.   The Asserted Claims Are Invalid On Grounds Of Non-Enablement or Indefiniteness

#### a.   Law on Non-Enablement or Indefiniteness

A patent claim must be enabling under 35 U.S.C. §112(a). "The full scope of the claimed invention must be enabled," meaning that a "patentee who chooses broad claim language must make sure the broad claims are fully enabled." *Sitrick v. Dreamworks LLC*, 516 F.3d 993, 999 (Fed. Cir. 2008). "Typically, patent applications claiming new [chemical] methods of treatment are supported by test results.… If a patent claims fails to meet the utility requirement because it is not useful or operative, then it also fails to meet the how to use aspect of the [§112] enablement requirement." *In re '318 Pat. Infr. Litig*. 583 F.3d 1317, 1324 (Fed Cir. 2009). Further, "it must appear in applicant's specification…, that the chemical or chemical combinations included

-16-

in the claims are capable of accomplishing the desired result." *In re Vaeck*, 947 F.2d 488, 492 (n.20)(Fed. Cir. 1991). "There must be some quantum of data or reasoning that supports the inventor's contention that a therapy operates as claimed." *Tawnsaura*, 2014 U.S. Dist. LEXIS at [*39].

A patent claim is indefinite under 35 U.S.C. §112(b), if, when "read in light of the specification delineating the patent, and the prosecution history, [the claim] fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. ___, 134 S. Ct. 2120, 2124, 189 L. Ed. 2d 37 (2014).

### b. Claims 16 and 18 are invalid as non-enabling or indefinite

Asserted method claims 16 and 18 both require the use of magnesium as only a "salt of an organic acid."[10] However, all of the examples and test results in the '450 Patent employ a magnesium salt of an organic acid in <u>combination</u> with magnesium <u>oxide</u>. Moreover, Hendrix admitted that he never made or administered the invention with a magnesium salt alone, i.e., without adding magnesium oxide. Ex. 1, Hendrix Dep. 74:17-25, 77:20-23, 78:7-79:2; Ex. 8; SUF ¶¶76-77.

There must be some quantum of data or reasoning that supports the inventor's contention that a therapy operates as claimed. *In re '318 Patent,* at

---

[10] All of the composition claims of the '450 Patent (1, 2, 5-9 and 12-15) require the combination of a magnesium salt of an organic acid and magnesium oxide.

1326. Here there is no supporting evidence or disclosure regarding the administration of <u>only</u> a magnesium salt of an organic acid in a treatment for migraine, and there is no data that supports that such a therapy would be effective. On the contrary, the '450 Patent actually teaches away from use of magnesium salt of an organic acid alone in combination with feverfew and riboflavin in criticizing Lazarowych's compositions that have low amounts of magnesium stearate which contains only 4% magnesium. Ex. 8; SUF ¶¶56-57. To overcome the problems with use of magnesium salt of an organic acid alone, the '450 Patent emphasizes that its "compositions all include significant quantities of magnesium present as a *combination of magnesium oxide and a salt of an organic acid.*" Ex. 8, '450 Patent 7:43-51 (emphasis added); SUF ¶57.

Because of the failure to include the essential combination with magnesium oxide, Claim 16 and 18 are invalid and unenforceable under 35 U.S.C. §112(a) and (b), as being not enabling and indefinite, since the method cannot operate with magnesium salt of organic acid alone. *Nautilus, Inc.*, 134 S. Ct. at 2124; *In re '318 Pat. Infr. Litig.* 583 F.3d at 1324-27.

### C.   Akeso is not entitled to lost profits or other damages as it is neither the owner nor the exclusive licensee of the '450 Patent

In order to claim lost profits, a party must be either the patent owner or the exclusive licensee of the patent owner. *Poly-America LP v. GSE Lining Technology Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004)("a licensee generally

may not sue for damages unless it has exclusive rights under a patent, including the right to sue.")

Akeso did not own the '450 Patent prior to 2016, when the instant suit was filed, and had no exclusive or other license under the patent prior to that date. SUF ¶¶79-83. On December 17, 2008, Hendrix assigned the '450 Patent to Concourse Health Sciences LLC, a California LLC. Ex. 1, Hendrix Dep. 95:9-96:15; Ex. 24; SUF ¶79. Significantly, in an assignment executed on June 7, 2016, a different company, Concourse Health Sciences LLC, a Delaware LLC, purported to assign the '450 Patent to Akeso. Ex. 1, Hendrix Dep. 97:19-99:22; Ex. 25; SUF ¶80. There is no evidence that Concourse Health Sciences LLC, the California LLC, ever transferred ownership of the '450 Patent to Concourse Health Sciences LLC, the Delaware LLC, and therefore the Delaware LLC had no patent rights to assign to Akeso. SUF ¶82. Moreover, the 2008 assignment incongruity cannot be attributed to mere typographical error, since Concourse Health Sciences LLC, the California LLC, was in existence in 2008, and was terminated in 2010. Ex. 23; SUF ¶81. Thus, Akeso has no standing to receive damages (or even to bring suit) since there was a break in the chain of title to the '450 Patent, in so much as its assignor, the Delaware LLC, had no rights in the '450 Patent to transfer.

Furthermore, Akeso has admitted that prior to June 7, 2016, it had no exclusive or other license from Concourse Health Sciences LLC under the '450 Patent. Ex. 1, Hendrix Dep. 96:25-97:10; SUF ¶83.

Thus, Akeso has no ownership or exclusive license rights in the '450 Patent, and consequently no basis for standing or lost profits or other damages in this action. *Poly-America*, 383 F.3d at 1311.

## V. CONCLUSION

DFH respectfully submits that there is no genuine issue of material fact that plaintiff Akeso's claims are barred under the doctrine of equitable estoppel; that asserted claims 16 and 18 of the '450 Patent are invalid for obviousness and non-enablement; and that plaintiff Akeso is not entitled to lost profits or other damages, such that defendant DFH is entitled to judgment as a matter of law.

Respectfully submitted,
**DeLIO, PETERSON & CURCIO, LLC**

Dated:  March 19, 2018          By:  _/s/Peter W. Peterson_____
                                     Peter W. Peterson

                                     Attorneys for Defendant
                                     **DESIGNS FOR HEALTH, INC**

Douglas G. Muehlhauser              Peter W. Peterson
(SBN 179495)                        David R. Pegnataro
doug.muehlhauser@knobbe.com         delpet@delpet.com
KNOBBE, MARTENS, OLSON              DeLIO, PETERSON & CURCIO, LLC
& BEAR, LLP                         700 State Street, Suite 402
2040 Main Street, 14th FL.          New Haven, Connecticut 06511
Irvine, CA  92614                   Tel (203) 787-0595
Tel.  (949) 760-0404                Fax  (203) 787-5818
Fax  (949) 760-9502

-20-

## <u>CERTIFICATE OF SERVICE</u>

I am a citizen of the United States and employed in New Haven County, Connecticut.  I am over the age of eighteen years and not a party to the within-entitled action. My business address is 700 State Street, New Haven, Connecticut 06511. On March 19, 2018, I served a copy of the within document(s):

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56(a)**

> (BY MAIL) by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at New Haven, Connecticut addressed as set forth below, and

> (BY E-MAIL) by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

> Shawn G. Hansen (SBN 197033)
> shansen@nixonpeabody.com
> NIXON PEABODY LLP
> 300 S. Grand Avenue, Suite 4100
> Los Angeles, CA 90071-3151

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 19, 2018, at New Haven, Connecticut.

_____
Barbara Colon

-21-