Douglas G. Muehlhauser (SBN 179495)
doug.muehlhauser@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA  92614
Phone:      (949) 760-0404
Facsimile:   (949) 760-9502

Peter W. Peterson (*pro hac vice*)
David R. Pegnataro (*pro hac vice*)
delpet@delpet.com
DeLIO, PETERSON & CURCIO, LLC
700 State Street, Suite 402
New Haven, Connecticut 06511
Phone:      (203) 787-0595
Facsimile:   (203) 787-5818

Attorneys for Defendant
DESIGNS FOR HEALTH, INC.

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| AKESO HEALTH SCIENCES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> DESIGNS FOR HEALTH, INC., <br><br> Defendant. <br><br> _____ | Case No. 2:16-cv-07749 SJO (PJWx) <br><br> Hon. S. James Otero <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR EXCEPTIONAL CASE DETERMINATION AND AWARD OF ATTORNEYS' FEES** <br><br> Hearing <br> Date:  June 25, 2018 <br> Time: 10:00 a.m. <br> Ctrm: 10C |

# TABLE OF CONTENTS

**Page No(s).**

I. INTRODUCTION ............................................................................... 1

II. BACKGROUND ............................................................................... 1

III. LEGAL STANDARDS ..................................................................... 2

IV. ARGUMENT .................................................................................. 5

    a.    Akeso's Subjective Bad Faith is Shown by its Failure to
Conduct an Adequate Pre-Suit Investigation .................................... 5

    b.    Akeso's Subjective Bad Faith is Further Shown by its
Commencement of this Action for an Oppressive Purpose ............ 10

        i.    Akeso had no evidence that demand for the patented
product was driven by the presence of the patented
composition ......................................................................... 12

        ii.    Akeso could not prove the absence of acceptable non-
infringing substitutes ......................................................... 14

    c.    DFH is Entitled to its Attorneys' Fees and Costs that it would
not have Incurred "but for" Akeso's Bad Faith Conduct ............... 19

V. CONCLUSION .............................................................................. 20

# TABLE OF AUTHORITIES

Page No(s).

**Cases**

*Athey v. Farmers Ins. Exchange,* 234 F.3d 357 (2000)........................................ 7

*Bayer Cropscience AG v. Dow Agrosciences LLC*, 851 F.3d 1302 (Fed. Cir. 2017) ...................................................................................... 9, 10

*Bene v. Jeantet*, 129 U.S. 683 (1889) .................................................. 3

*Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378 (2005) ......... 3

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) .................................... 3

*Fox v. Vice*, 563 U.S. 826 (2011) ....................................................... 19

*Goodyear Tire & Rubber Co. v. Haeger et al.*, 581 U.S. ____ (2017) ........ 19, 20

*Highmark, Inc. v. Allcare Health Management*, 687 F.3d 1300 (Fed. Cir. 2012) .................................................................................... 4, 5

*In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed.Cir. 2007)................................ 4

*Kilopass Technology, Inc., v. Sidense Corp.*, 783 F.3d 1302 (Fed. Cir. 2013) 4, 5

*Lumen View Tech, LLC v. Findthebest.com, Inc*., 811 F.3d 479 (Fed. Cir. 2016) ...................................................................................... 9

*Octane Fitness, LLC v. ICON Health & Fitness, Inc*., 134 S. Ct. 1749 (2014)2, 3

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc*., 575 F.2d 1152 (6th Cir. 1978) ...................................................................................... 12

*State Industries v. Mor-Flo Indus.*, 883 F.2d 1573 (Fed Cir. 1989) ................. 16

*U.S. v. Austin*, 54 F.3d 394 (1995) ................................................... 7

# TABLE OF AUTHORITIES
## *(cont'd.)*

**Page No(s).**

**Statutes**

21 U.S.C. § 343 .................................................................................................. 13

35 U.S.C. § 271 .................................................................................................... 1

35 U.S.C. § 285 ................................................................................................. 1, 2

**Other Authorities**

Fed. R. Civ. P. 30 ........................................................................................ 8, 12, 15

Fed. R. Evid. 408 ................................................................................................. 7

## I.    INTRODUCTION

Defendant Designs For Health, Inc. ("DFH") respectfully moves for an order determining this case to be "exceptional" under 35 U.S.C. § 285, and awarding DFH's costs and attorneys' fees in an amount to be determined or agreed upon following the resolution of this motion. DFH submits that this case should be determined "exceptional" as being objectively unreasonable, on at least the grounds of inadequate pre-suit investigation and oppressive purpose, as evidenced by the lack of substantive strength of plaintiff Akeso Health Sciences, LLC's ("Akeso") litigation position.

## II. BACKGROUND

On October 18, 2016, Akeso brought this single Count action alleging both direct and indirect infringement of U.S. Patent No. 6,500,450 (the " '450 Patent") in connection with DFH's Migranol dietary supplement product.[1] Akeso sought damages, but no injunction. More than ten years earlier, by letter dated April 18, 2006, Curt Hendrix (Chief Scientific Officer of Akeso and inventor of the '450 Patent) accused DFH of infringing the '450 Patent and demanding that DFH cease and desist manufacture, distribution, and sale of its Migranol dietary supplement, as well as destroy all inventory, by May 1, 2006. An attorney for DFH sent a response letter dated April 27, 2006 indicating that more time was

---

[1] The Court granted DFH's motion to dismiss as to the contributory infringement allegations under 35 U.S.C. § 271(c) in Akeso's First Amended Complaint, leaving allegations of direct and inducement of infringement remaining under 35 U.S.C. §§ 271(a) and (b). *See* ECF No. 28.

needed to analyze the asserted patents. No further communications were exchanged between the parties until Akeso filed this action more than ten years later on October 18, 2016.

In its Answer (ECF No. 32), DFH asserted a defense of equitable estoppel on the basis of the 2006 communications, and later moved for summary judgment at the close of fact discovery as to several issues, including:equitable estoppel; invalidity of the '450 Patent on the grounds of obviousness and non-enablement; and Akeso's lack of entitlement to lost profits due to being neither the valid owner nor exclusive licensee of the '450 Patent. *See* ECF No. 58. On April 26, 2018, this Court granted summary judgment in DFH's favor as to the issue of equitable estoppel. *See* ECF No. 88. The Court did not reach the remaining issues set out in DFH's Motion.

## III.  LEGAL STANDARDS

"Section 285 of the Patent Act authorizes a district court to award attorney's fees in patent litigation. It provides, in its entirety, that '[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party.' " *Octane Fitness, LLC v. ICON Health & Fitness, Inc*., 134 S. Ct. 1749, 1752 (2014) (quoting 35 U.S.C. § 285). Construing § 285, the Supreme Court held that

> an "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the

case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

*Id*. at 1756 (footnote omitted).

In making such a determination, "there is no precise rule or formula" to be followed; rather, the Court should use its "equitable discretion" in light of the above considerations. See *id*. (quoting *Fogerty v. Fantasy, Inc*., 510 U.S. 517, 534 (1994)); see also *id*. at n.6 (In making this determination, district courts may "consider a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.' " (internal citation omitted)).

In *Octane Fitness*, the Supreme Court rejected the Federal Circuit's requirement that patent litigants establish their entitlement to fees under § 285 by "clear and convincing evidence," as set forth in *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc*., 393 F.3d 1378, 1382 (2005). "Section 285 demands a simple discretionary inquiry; it imposes no specific evidentiary burden, much less such a high one. Indeed, patent infringement litigation has always been governed by a preponderance of the evidence standard[.]" *Octane Fitness* at 1758 (citing *Bene v. Jeantet*, 129 U.S. 683, 688 (1889)).

Moreover, in note 4 of *Octane Fitness*, the Supreme Court cited with approval the approach taken by the Court of Appeals for the Federal Circuit in

the *Kilopass Technology* case*:*

> [T]he Federal Circuit appeared to cut back on the "subjective bad
> faith" inquiry, holding that the language in *iLOR* was dictum and
> that "actual knowledge of baselessness is not required."[*Kilopass
> Technology, Inc., v. Sidense Corp*.,]783 F.3d [1302 (Fed. Cir.
> 2013)], at 1310. Rather, the court held, "a defendant need only
> prove reckless conduct to satisfy the subjective component of the §
> 285 analysis,"*ibid*. and courts may "dra[w] an inference of bad faith
> from circumstantial evidence thereof when a patentee pursues
> claims that are devoid of merit,"*id*, at 1311. Most importantly, the
> Federal Circuit stated that ***"[o]bjective baselessness alone can
> create a sufficient inference of bad faith to establish
> exceptionality under § 285***, unless the circumstances as a whole
> show a lack of recklessness on the patentee's part."(emphasis
> added). *Id*., at 1314.

"As we made clear in *Highmark, Inc. v. Allcare Health Management*, 687

F.3d 1300 (Fed. Cir. 2012), subjective bad faith only requires proof that the

"lack of objective foundation for the claim 'was *either* known *or* so obvious that

it should have been known' by the party asserting the claim."*Highmark*at 1309

(emphases added) (quoting *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed.

Cir. 2007) (en banc)). Thus, actual knowledge of baselessness is not required.

Like a plaintiff seeking to recover attorneys' fees under § 285 based on alleged

willful infringement, a defendant need only prove reckless conduct to satisfy the

subjective component of the § 285 analysis. [Citations omitted]." *Kilopass

Technology, Inc., v. Sidense Corp*., 783 F.3d 1302, 1310 (Fed. Cir. 2013).

"*Brooks Furniture [Mfg., Inc. v. Dutailier Int'l, Inc.]* thus did nothing to

discourage courts from drawing an inference of bad faith from circumstantial

evidence thereof when a patentee pursues claims that are devoid of merit. Factors such as the failure to conduct an adequate pre-suit investigation… or an oppressive purpose are factors which can be indicative of bad faith." *Id.* at 1311.

Section 285 is remedial and its aim is to compensate a [party] for attorneys' fees it should not have been forced to incur. *Id.* at 1313. *See also, Highmark*, 687 F.3d at 1310 (stating that § 285 "is remedial and for the purpose of compensating the prevailing party for the costs it incurred in the prosecution or defense of a case where it would be grossly unjust ... to require it to bear its own costs.")

## IV. ARGUMENT

### a. Akeso's Subjective Bad Faith is Shown by its Failure to Conduct an Adequate Pre-Suit Investigation

As acknowledged by this Court in its Order granting DFH's Motion for Summary Judgment on the issue of equitable estoppel, Akeso - through its Chief Scientific Officer and inventor of '450 Patent, Curt Hendrix - knew of the April 18, 2006 cease and desist letter to DFH accusing DFH of infringing the '450 Patent ("Hendrix Cease and Desist Letter"). *See* ECF No. 88 at pp. 1-2.[2] As further acknowledged by this Court, an attorney for DFH sent a response letter dated April 27, 2006 ("DFH Response Letter") indicating that more time was

---

[2] In its Order granting DFH's Motion for Summary Judgment, the Court noted the lack of plausible interpretation that Hendrix's position, as outlined in the April 18, 2006 letter, was non-adversarial, as the threat of litigation was implied heavily throughout. *See* ECF No. 88 at p. 5.

needed to analyze the asserted patents, and after DFH failed to meet its self-imposed extended deadline to respond to Hendrix's cease-and-desist letter, no further communications were exchanged between the parties until Akeso filed this action over ten years later on October 18, 2016. *See* ECF No. 88 at p. 2.[3]

DFH first gave notice of its equitable estoppel defense on March 13, 2017 in its Answer to Akeso's First Amended Complaint. *See* ECF No. 32. On March 27, 2017, immediately subsequent to the Court's Rule 26(f) Scheduling Conference, counsel for DFH provided Akeso's counsel, in person, with copies of the Hendrix Cease and Desist Letter and DFH Response Letter, and discussed in detail the basis of DFH's equitable estoppel defense. Peterson Decl. ¶5; Exs. 2, 3. DFH then followed-up with Bates-stamped copies of the Hendrix Cease and Desist Letter and DFH Response Letter in response to Akeso's document production requests on May 30, 2017. Peterson Decl. ¶6; Ex. 4. Akeso produced its own independent copies of the letters in response to DFH's production requests on August 18, 2017, thus admitting that it had possession of the 2006 correspondence all along. Peterson Decl.¶7; Ex. 5.

DFH's counsel provided in detail its evidence of equitable estoppel in a letter to Akeso's counsel of October 18, 2017 (Peterson Decl. ¶8; Ex. 6), to

---

[3] The Court further noted in its Order that the suit for infringement was delayed for over ten years, and that there is "nothing on the record that would support an inference by DFH that the delay was tactical in nature," and thus Akeso's failure to preserve over four years of potential lost profits was reasonably interpreted by DFH as an abandonment of its claims. *See* ECF No. 88 at p. 5.

which Akeso's counsel responded by letter dated October 24, 2017[4] and admitted Akeso's long silence after Hendrix's adversarial demand in the 2006 Cease and Desist Letter, i.e., "Akeso's long-ago notice of infringement." Peterson Decl. ¶9. The letter however denied equitable estoppel on the basis of so-called "controlling authority" under the *Petrella* case that there must be "intentionally misleading representations." The letter cited no controlling Federal Circuit law in patent cases.[5]

Contrary to Akeso's assertions in its October 24, 2017 letter, "controlling authority" of the Federal Circuit under *Aukerman* in fact is not limited to

---

[4] Akeso's October 24, 2017 letter was designated as a "Confidential Settlement Communication – Subject to FRE 408;" however it is not being offered by DFH for this purpose. DFH respectfully submits that the letter is admissible under an exception to FRE 408 where it is "offered for another purpose," as it is here to show notice and subjective bad faith on the part of Akeso as to DFH's equitable estoppel defense. *See U.S. v. Austin*, 54 F.3d 394 (1995) ("While Federal Rule of Evidence 408 prohibits the admission of statements made in the course of settlement to prove liability and Rule 404(b) prohibits the admission of other wrongs in order to show action in conformity therewith, both rules allow the admission of such evidence when offered for another purpose.") *See also, Athey v. Farmers Ins. Exchange,* 234 F.3d 357 (2000). As the October 24, 2017 letter has been designated as confidential by Akeso, DFH has cited only to the relevant non-confidential portions herein and is not offering the full letter as an Exhibit at this time; however, DFH can submit the letter "under seal" if the Court finds the letter necessary for deciding this Motion.

[5] In its October 24, 2017 letter, Akeso further misapplies the standard for equitable estoppel set out by the Federal Circuit in *Aukerman,* alleging that "Akeso's long-ago notice of infringement" fails to support DFH's equitable estoppel defense but rather is evidence that "DFH was willfully blind to the likelihood that it was infringing" in the intervening ten years since the 2006 correspondence, and "as such is liable for willful infringement." Peterson Decl. ¶9.

"intentionally misleading representations," but rather can be a period of long silence after adversarial demand, plus detrimental reliance and material prejudice, as acknowledged by this Court in its Order granting summary judgment on the issue of equitable estoppel. *See* ECF No. 88 at pp. 3-5.

Akeso acknowledged as much in its Opposition Brief to DFH's Motion for Summary Judgment, never even citing the so-called "controlling authority" under the *Petrella* case and its supposed requirement of "intentionally misleading representations," as set forth in its October 24, 2017 letter. Rather, Akeso acknowledged that *Aukerman* is the leading case for equitable estoppel, and that silence can be the basis for an equitable estoppel defense. ECF No. 65 at p. 5.

Moreover, Akeso never presented any evidence in its Opposition Brief to refute DFH's evidence of detrimental reliance and material prejudice. Akeso's objectively baseless position on the issue of equitable estoppel was further undermined by Hendrix, as Akeso's Rule 30(b)(6) witness, admitting at deposition that he put DFH on notice of infringement by his 2006 cease-and-desist letter, and further admitting that he knew of DFH's continued sale of Migranol from 2006 on, and that he intentionally did nothing after the 2006 cease-and-desist letter because he had "put them on notice." Peterson Decl., Ex. 1, Hendrix Dep. at 79:4-15, 82:6-9, 83:9-84:25.

Akeso knew it had no rebuttal to DFH's evidence of detrimental reliance

and material prejudice and, further, never even took any deposition of DFH during fact discovery. Peterson Decl. ¶10. Akeso's conduct in litigating this case in the face of substantial evidence that supported DFH's equitable estoppel position, including that of the testimony of Akeso's own witness, was objectively unreasonable.[6]

Had Akeso performed an adequate pre-suit investigation, at least of its own easily-obtainable evidence – i.e., questioned its own Officer and inventor of the '450 Patent (Curt Hendrix), and reviewed its own independently-produced copies of the Hendrix Cease and Desist Letter and DFH Response Letter, it would have discovered the weak nature of its case, particularly that any requested relief would be barred under the doctrine of equitable estoppel, and likely not filed suit. *Bayer,* 851 F.3d at 1307. *See also Lumen View Tech, LLC v. Findthebest.com, Inc*., 811 F.3d 479, 481-483 (Fed. Cir. 2016)(stating that pre-suit diligence is correctly viewed as a factor in the totality-of-the-circumstance approach in § 285 determinations.)

At the very least, Akeso should have known by the time of its October 24, 2017 letter that its position was untenable, as interrogatory responses and

---

[6] See *Bayer Cropscience AG v. Dow Agrosciences LLC*, 851 F.3d 1302, 1306 (Fed. Cir. 2017)(finding that the district court did not abuse its discretion in finding that the positions Bayer took to support their arguments were directly contradicted by the record evidence Bayer had obtained through early discovery and that Bayer should have made every effort to discover before filing suit, such that "Bayer marched onward with a view of its case that was not supported by its witnesses." *Fees Op*., 2015 WL 1197436, at *9).

responses to requests for production, as well as responses to requests for admissions, had already been exchanged. Nevertheless, Akeso marched onward with its case and advanced arguments that were directly contradicted by the record evidence Akeso had obtained through early discovery and that Akeso should have made every effort to discover before filing suit. *Bayer*, 851 F.3d at 1306.

### b. Akeso's Subjective Bad Faith is Further Shown by its Commencement of this Action for an Oppressive Purpose

DFH has long been a direct competitor, along with many other entities, of Akeso in the sale of dietary and nutritional supplements. Akeso filed at least nine actions (including the instant case) for patent infringement since June 7, 2016, approximately two years before the expiration of the '450 Patent on June 25, 2018. At least eight of these actions were filed in 2016 alone. *See* Hendrix Decl. ¶16, ECF No. 69. According to publicly available court records, Akeso either voluntarily dismissed, or jointly stipulated to dismissal of, all eight of the other cases asserting infringement of the '450 Patent, presumably on the basis of settlement for a nominal cash payment as compared to the average cost for patent litigation through trial. Two of these cases were dismissed within one month of filing, and all eight cases were dismissed within approximately one year.

DFH submits that Akeso never intended to litigate this case through trial,

and that Akeso brought this case (along with a flurry of other litigation) for the sole purpose of extracting a quick settlement from DFH as a final attempt by Akeso to capitalize monetarily on a dubious patent which should never have issued, prior to the patent's expiration in June 2018. *See* DFH's Motion for Summary Judgment, ECF No. 58. Akeso filed its patent infringement action against DFH in the Central District of California, taking advantage of a now-discredited reading of the venue statute to drag DFH into a venue across the country from its main offices in Connecticut and state of incorporation in Florida. Akeso's Complaint never even requested an injunction, suggesting that Akeso knew that the '450 Patent would likely expire by the time the case came to trial.

Moreover, this Court in its Order granting DFH's Motion for Summary Judgment found that in connection with Akeso's claim brought more than ten years after its initial 2006 cease-and-desist letter, the "facts indicate more strongly that **Akeso** saw a market opportunity to resuscitate its previously abandoned claims in order to capitalize on DFH's stronger revenues." (emphasis in original). *See* ECF No. 88 at p. 6.

It is clear that Akeso brought this action hoping for a quick settlement for alleged high "lost profits" damages, as well as a claim for treble damages based on an allegation of willfulness for which it could offer no evidentiary support. *See* First Amended Complaint ("FAC"), *Prayer for Relief* ¶¶C, D, E (ECF No.

-11-

23). However, Akeso knew (or should have known) that it had no basis for any such lost profits damages since it could not prove the absence of acceptable non-infringing substitutes, nor that demand for its Migre-Lief® product is driven by the patented composition. *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc*., 575 F.2d 1152, 1156 (6th Cir. 1978); *Bic Leisure Profits v. Windsurfing*, 1 F.3d 1214 (Fed. Cir. 1993).

>       i.    **Akeso had no evidence that demand for the patented product was driven by the presence of the patented composition**

Akeso had been expected to offer Curt Hendrix, its Chief Scientific Officer and inventor of the '450 Patent, as its expert witness at trial as to damages, including lost profits. As part of his *Panduit* analysis in his Expert Report, Hendrix summarily, and without additional objective evidentiary support, states that the patented combination of a therapeutically effective amount of parthenolide, riboflavin, and magnesium provided as a salt of an organic acid, is the reason why migraine sufferers purchase Akeso's MigreLief® product, and that demand for the product is established beyond dispute by Akeso's sales figures since 2010. Peterson Decl., Ex. 8, Hendrix Report, ¶¶21-22. *See also* ECF No. 81-7.

This was contradicted by Hendrix's deposition testimony, where as Akeso's Rule 30(b)(6) witness, he testified that customers may purchase MigreLief® because it contains proprietary PURACOL brand feverfew, and

that customers might purchase MigreLief® over competitors because of it. Peterson Decl., Ex. 1, Hendrix Dep. at 35:10-36:2.

The migraine dietary supplement market in which Akeso (and DFH) competes is unregulated, highly competitive, and has very low barriers to entry, and includes tens - if not hundreds - of manufacturers. Hendrix, in his Expert Report, references no surveys, objective expert opinions, or other statistically reliable data establishing what drives demand for dietary supplements that claim to treat migraine headaches. Hendrix further testified at deposition that Akeso has not surveyed any of its MigreLief® customers (Peterson Decl., Ex. 1, Hendrix Dep. at 40:8-24). Therefore, neither Hendrix nor Akeso can point to any objective evidence as to why customers choose MigreLief® over other dietary supplements, or whether customers find MigreLief® effective. Moreover, it is undisputed that Akeso is not permitted to state or claim in its marketing or advertising materials for MigreLief® the sole benefit of the patented composition of asserted claim 16 of the '450 Patent, i.e., reducing the symptoms of migraine headache, under the Dietary Supplement Health and Education Act (*see, e.g.,* 21 U.S.C. §343(r)(6)). *See* DFH's Statement of Genuine Disputes of Additional Material Fact ("SDAF"), ECF No. 75, ¶84; *See also* Peterson Decl., Ex. 1, Hendrix Dep. at 29:23-30:4. Therefore, the economic benefit of the patented composition is unknown, and at best, purely speculative. As such, Akeso could not prove that the "demand" for MigreLief® is any less

attributable to its packaging, price, channels of availability for purchase, anecdotal evidence of effectiveness, confusion with other products, or pure chance, than that of its patented composition.

Further still, Hendrix testified at deposition that Akeso has not done any testing of MigreLief® to determine whether it is effective for reducing the symptoms of migraine headache, or whether MigreLief® is any more effective than other migraine dietary supplements on the market, or made any surveys of customers, and any evidence thereof is purely anecdotal. Peterson Decl., Ex. 1, Hendrix Dep. at 39:8-40:24.

As shown by the evidence, or lack thereof, produced during discovery in this case, Akeso knew at the time it filed suit that it could not offer any evidence that demand for its Migre-Lief® product is driven by the patented composition, and therefore it knew (or should have known) that its demand for such excessive lost profits damages was objectively baseless.

### ii. Akeso could not prove the absence of acceptable non-infringing substitutes

Element 2 of the traditional *Panduit* test for eligibility for lost profits is that the plaintiff must prove "the absence of acceptable non-infringing substitutes." In his Expert Report as to damages, Hendrix defines the market for MigreLief® as consisting only of products containing the patented composition, and asserts that Akeso is therefore entitled to lost profits for each and every sale

-14-

of DFH's Migranol supplement from October 18, 2010 through trial. Peterson Decl., Ex. 8, Hendrix Report, ¶¶6, 23-24, 28. Notwithstanding that the market as defined by Hendrix excludes the various other entities against which Akeso has asserted the '450 Patent since June 2016 (Hendrix Decl. ¶16, ECF No. 69), all entities which presumably should be included in the market, Hendrix improperly narrowly construed the relevant market by excluding other dietary supplements that claim to treat migraines. If "reasonably acceptable non-infringing substitutes" can be limited only to products that infringe the patent, the *Panduit* test is automatically wiped out. By definition, there can be no reasonably acceptable non-infringing substitutes, because the market as defined by Hendrix consists only of products that practice the patent.

Curiously, at his Rule 30(b)(6) deposition on behalf of Akeso, Hendrix had a contradictory opinion as to the market. He testified that performing an internet search for "migraine supplements" would produce search results in which all listed products are competitive products to MigreLief®. Peterson Decl., Ex. 1, Hendrix Dep. at 24:18-25:4. Moreover, Hendrix testified that there are at least ten and "probably not" more than fifty competitive products to MigreLief® on the market, and that many of the competitive products contain some combination of at least two of the ingredients in the patented composition. Hendrix Dep. at 34:24-35:9, 36:3-24, Ex. 1. It is clear from Hendrix's conflicting positions that Hendrix's lost profits testimony - the only evidence submitted by

Akeso as to lost profits other than its sales figures - fails the second element of the *Panduit* test.

In the modern softened version of the *Panduit* test, where there are reasonably acceptable non-infringing substitutes for the patented product on the market, the best a plaintiff can do is recover lost profits on its proportionate share of sales in the actual market for the patented product, taking price into consideration and the reasonably acceptable substitutes. *State Industries v. Mor-Flo Indus.*, 883 F.2d 1573, 1578 (Fed Cir. 1989). "This market share approach allows a patentee to recover lost profits despite the presence of acceptable, non-infringing substitutes, because it nevertheless can prove with reasonable probability sales it would have made 'but for' the infringement." *Bic Leisure Profits*, supra, at 1219.

In contrast to *State Industries*, where the absolute superiority of foam's insulating performance made fiberglass unacceptable, Hendrix in his Expert Report confuses the specific composition of the '450 Patent as the "advantage" that motivates purchasers to insist on dietary supplements with the patented composition, instead of examining whether other competitors were meeting the demand for non-prescription dietary supplements for treating or reducing the symptoms of migraine headaches. Hendrix compounds this error by assuming that every sale of MigreLief® is proof that Akeso's customers would be satisfied only with a dietary supplement with the patented composition. Peterson

-16-

Decl., Ex. 8, Hendrix Report, ¶¶19, 21, 23-24. This logic is completely circular, and is unsupported by any evidence that a reasonable expert would accept, or that the law would allow.

The objective proof of whether an item is an acceptable substitute must ultimately be grounded in market behavior. *BicLeisure Profits*, supra, at 1220. In his Expert Report, Hendrix simply assumes his own conclusion: his only empirical evidence is the gross dollar and unit sales, and profit margin of Akeso's sales of MigreLief®. Yet, Hendrix testified that there could be as many as fifty competitive products to MigreLief® in the market, and further testified that Akeso doesn't know its market share. Peterson Decl., Ex. 1, Hendrix Dep. at 34:11-23.

Akeso never did any testing of MigreLief® to determine whether it is effective for reducing the symptoms of migraine headache, or whether MigreLief® is any more effective than other migraine dietary supplements on the market, or made any surveys of customers, or produced any objective evidence to establish what drives demand for dietary supplements that claim to treat migraine headaches. Therefore, the only evidence Akeso could offer as to the absence of acceptable non-infringing substitutes is Akeso's MigreLief® sales, which are simply not probative of demand for the patented composition without a comparison of the sales volume of other competitors in the migraine dietary supplement market.

-17-

The patented composition of the '450 Patent was an alleged improvement on existing migraine treatments which had been available for decades, if not longer, and was a composition comprising three compounds already separately known for their positive effects on migraine treatment (i.e., parthenolide, riboflavin, and magnesium salt of an organic acid), not an entirely new product. There is no evidence of a surge in sales toward Akeso when Migre-Lieve (the precursor to MigreLief®) entered the market, and away from other migraine treatment dietary supplements already in existence. Moreover, Akeso could produce zero evidence of demand for Akeso's patented composition, as embodied in the MigreLief® product, in comparison with other readily available dietary supplements for migraine treatment. Akeso thus could not prove the absence of acceptable non-infringing substitutes to its Migre-Lief® product, a prerequisite to its claim of entitlement to lost profits.[7]

Akeso's inability to produce any evidence of the absence of acceptable non-infringing substitutes for its MigreLief® product, or any evidence at all as to lost profits other than the inconsistent testimony of its own witness, further bolsters DFH's assertion that Akeso's demand for excessive lost profits damages was objectively baseless, and that the true basis for this case was an attempt to extract a quick settlement from DFH.

---

[7] Despite Akeso's assertion in its October 24, 2017 letter that it had "substantial evidence that non-infringing alternatives are not acceptable to the relevant customers,"Akeso failed to ever produce such evidence.

-18-

### c. DFH is Entitled to its Attorneys' Fees and Costs that it would not have Incurred "but for" Akeso's Bad Faith Conduct

A trial court, when using its inherent or statutory authority to grant attorneys' fees to a prevailing party, must first establish a causal link. "The complaining party…may recover 'only the portion of his fees that he would not have paid but for' " the misconduct. See *Goodyear Tire & Rubber Co. v. Haeger et al.*, 581 U.S. ____, at p. 7. (2017) (citing *Fox v. Vice*, 563 U.S. 826, 836 (2011)). "In exceptional cases, the but-for standard even permits a trial court to shift all of a party's fees, from either the start or some midpoint of a suit, in one fell swoop." *Id.* at p. 8.

The objectively unreasonable nature of this case, evident at least from Akeso's inadequate pre-suit investigation as to the issue of equitable estoppel, entitles DFH to reasonable attorneys' fees and costs from the outset of litigation in October 2016. Had Akeso performed an adequate pre-suit investigation of its own easily-obtainable evidence, it would have discovered that any requested relief would be barred under the doctrine of equitable estoppel, as ultimately found by this Court, and likely not filed suit. Instead, Akeso proceeded with its case and advanced arguments that were directly contradicted by the record evidence Akeso had obtained through early discovery and that Akeso should have made every effort to discover before filing suit. As a result, DFH was forced to expend significant costs and fees

over the course of 18 months to defend a case which should never have been brought in the first place.

At a minimum, DFH is entitled to its costs and fees from August 18, 2017 on, at which time Akeso produced its own independent copies of the Hendrix Cease and Desist Letter and DFH Response Letter in response to DFH's production requests, thus admitting that it had possession of the 2006 correspondence all along and acknowledging that it was (or should have been) aware of the evidence fatal to its position on the issue of equitable estoppel. See *Goodyear Tire & Rubber Co.*, 581 U.S. ____, at pp. 8-9.

## V.  CONCLUSION

Akeso's subjective bad faith in bringing this action is evident from its failure to conduct an adequate pre-suit investigation, at a minimum of its own easily-obtainable evidence, which would have revealed the strength of DFH's equitable estoppel defense which the Court found to be meritorious. The objectively unreasonable nature of this case is further evidenced by the lack of substantive strength of Akeso's litigation position with respect to its demand for excessive lost profits damages, for which it submitted no objectively reliable evidence. As such, DFH respectfully submits that this case should be determined "exceptional" as being objectively unreasonable when filed, and that DFHbe awarded its costs and attorneys' fees in an amount to be determined.

Respectfully submitted,

**DeLIO, PETERSON & CURCIO, LLC**

Dated:  May 16, 2018

By:  _/s/Peter W. Peterson_____
     Peter W. Peterson

   Attorneys for Defendant
**DESIGNS FOR HEALTH, INC**

Douglas G. Muehlhauser
(SBN 179495)
doug.muehlhauser@knobbe.com
KNOBBE, MARTENS, OLSON
& BEAR, LLP
2040 Main Street, 14th FL.
Irvine, CA  92614
Tel.  (949) 760-0404
Fax  (949) 760-9502

Peter W. Peterson
David R. Pegnataro
delpet@delpet.com
DeLIO, PETERSON & CURCIO, LLC
700 State Street, Suite 402
New Haven, Connecticut 06511
Tel (203) 787-0595
Fax  (203) 787-5818

-21-

## CERTIFICATE OF SERVICE

I am a citizen of the United States and employed in New Haven County, Connecticut.  I am over the age of eighteen years and not a party to the within-entitled action. My business address is 700 State Street, New Haven, Connecticut 06511. On May 16, 2018, I served a copy of the within document(s):

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR EXCEPTIONAL CASE DETERMINATION AND AWARD OF ATTORNEYS' FEES**

> (BY MAIL) by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at New Haven, Connecticut addressed as set forth below, and
>
> (BY E-MAIL) by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

> Shawn G. Hansen (SBN 197033)
> shansen@nixonpeabody.com
> NIXON PEABODY LLP
> 300 S. Grand Avenue, Suite 4100
> Los Angeles, CA 90071-3151

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 16, 2018, at New Haven, Connecticut.

_____
Barbara Colon

-22-